## ALLEN et al. v. GULF OIL COR-PORATION.

### No. 8852.

Court of Civil Appeals of Texas. Austin.
March 20, 1940.

Rehearings Denied April 17, 1940.

Thomas Y. Banks of San Antonio, for appellant W. L. Allen.

Gerald C. Mann, Atty. Gen., and James P. Hart and Edgar Cale, Asst. Attys. Gen., for appellants Railroad Commission and others.

John E. Green, Jr., and Joe S. Brown, both of Houston, and Stanley Hornsby, of Austin, for appellee.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is by Allen, the permittee, and the Railroad Commission from a final judgment setting aside an order of the Commission granting a permit to drill a third well upon a 2.77-acre tract in the East Texas Oil Field, "to prevent confiscation of property," and perpetually enjoining production from the well drilled thereunder; the judgment providing that it is "without prejudice to the right of the defendant, W. L. Allen, to take such proceedings before the Railroad Commission as conditions arising after the time the permit herein cancelled was granted may warrant."

We quote this provision of the judgment for the reason that Allen contends that since it perpetually enjoins him from production from the well, it precludes further application to the Commission based upon subsequent changed conditions which would warrant granting a permit. The contingency authorizing such subsequent permit is thus expressly provided for in the judgment. But even in the absence of this express provision, the same effect would be given the judgment. The paramount purpose of the suit was to set side the permit upon the alleged non-existence of facts at the time it was granted warranting such granting. The injunction against production from the granted well was merely an essential enforcement remedy ancillary to the judgment annulling the order.

The suit was tried after the decision in the Century case (Railroad Com. v. Magnolia Pet. Co., 130 Tex. 484, 109 S.W.2d 967) and its interpretation by this court in Gulf Oil Corp. v. Wood, Tex.Civ.App., 120 S.W.2d 543, error dismissed, and before the decisions in the Atlantic case (Gulf Land Co. v. Atlantic Ref. Co., Tex.Sup., 131 S. W.2d 73), and in Railroad Com. v. Gulf

Prod. Co., Tex.Sup., 132 S.W.2d 254, and those of this court in Ward Oil Co. v. Overton Ref. Co., 131 S.W.2d 700; Shell Pet. Corp. v. R. R. Com., 133 S.W.2d 194, error refused, and Shell Pet. Corp. v. Railroad, Tex.Civ.App., 137 S.W.2d 797. For that reason, no doubt, both the question of confiscation and that of waste were developed. The evidence shows that the 2.77-acre tract was a part of a 3.11-acre lease upon which three wells had been granted. Thereafter, a tract containing .34 acre upon which one of the wells was located was alienated by Allen, leaving in him the remainder of the tract containing 2.77 acres upon which were the remaining two wells. It was upon this 2.77-acre tract that permit was granted to drill a third well—that in question.

■ The evidence conclusively shows that the two wells on the 2.77 acres and the three wells on the 3.11 acres were amply sufficient to protect the owners of those tracts in their right to recover their fair share of the recoverable oil in place under those tracts; and therefore confiscation was conclusively negatived.

■ While not expressly so, this is practically conceded by appellants. They seek, however, to support the permit upon the prevention of waste theory. The trial court manifestly annulled the permit upon both the confiscation and waste theories. There is a mass of testimony upon the latter; but since the permit was granted only "to prevent confiscation of property," the waste theory is eliminated, and we pretermit its discussion. Atlantic case, Railroad Com. v. Gulf Prod. Co.; Ward Oil Co. v. Overton Ref. Co., and Shell cases, above.

■ By cross-assignment appellee urges error of the trial court in an order granting a supersedeas and in overruling a motion to set aside that order. The order recites that it was granted in open court upon motion to fix the amount of a supersedeas bond. The motion to set aside the order asserted that the order was oral, and granted ex parte, and that the effect of the supersedeas will be to injure appellee irreparably, the bond affording no protection against such injury; and offered to submit proof of these assertions.

The cross-assignment is predicated upon the proposition that the proceeding (a statutory appeal from an order of an administrative board) is not a civil suit, and therefore is governed exclusively by the authorizing statute. Vernon's Tex.Civ.Ann., Art.

6049c, Sec. 11. The question is clearly ruled by the decision in Magnolia Pet. Co. v. McClendon, 123 Tex. 10, 65 S.W.2d 484, unless, as asserted by appellee, the amendment to that section passed in 1935 (44th Leg.Reg.Sess., p. 74, Ch. 28, § 2) denied the theretofore existing right to a supersedeas. The original Art. 6049c, Sec. 11, was passed in 1931, Gen.Laws 42nd Leg., 1st C.S., Chap. 26, p. 46, § 11, and was in effect in 1933, when the Magnolia case was decided. We have carefully examined both the original act of 1931 and the amendment of 1935, and find nothing in either which expressly or by implication either grants or denies the right of supersedeas. This right was predicated in the Magnolia case upon Arts. 2249, 2270, 2275, Rev.St.1925, and the decisions in Houtchens v. Mercer, 119 Tex. 431, 29 S.W.2d 1031, 69 A.L.R. 1103, and Yett v. Cook, 115 Tex. 175, 268 S.W. 715. We find nothing in the amendment of 1935 which would authorize a construction in the respect in question other than that given the original act of 1931 in the Magnolia case.

Appellee cites in this connection the holding of the Fort Worth court in Mayhew v. Power, Tex.Civ.App., 104 S.W.2d 642, 644, Justice Speer writing. That was an original mandamus proceeding to require the district judge to fix the amount of a supersedeas bond in an appeal from a final judgment refusing to set aside an order of the Liquor Control Board cancelling a permit to sell beer and wine. The right to supersede the judgment was denied upon what we regard as a proper construction of Vernon's Ann.P.C. Arts. 666—12 and 666—14. The former contains the following: "In the event of resort to any Court from an order of cancellation or suspension in whatever form the proceedings may be brought, it shall in no wise act as a supersedeas of the order of cancellation or suspension. The permit so cancelled or suspended shall stand cancelled or suspended pending the final disposition of the proceedings as hereinafter conditioned."

The latter provides: "And in the event of any person being aggrieved by any decision, rule, or order of the Board, such person shall have the right of an appeal therefrom to the District Court of the County in which a decision, rule, or order in such case would become effective, said suit to be against the Board alone as defendant, and such suit shall be tried de novo, and be governed by the same rules as other suits in said Court, and during the pendency of

such suit the order of the Board may be suspended by interlocutory order of the Court pending a hearing on the merits."

More apt language could hardly be employed to express the thought that orders of the Liquor Control Board cancelling or suspending dealer's permits were to be effective when made and could be suspended only by and to the extent of an *interlocutory* court order "pending a hearing on the merits in *that court.*" (Italics supplied.)

We overrule the cross assignment.

■ The Commission in a supplemental brief assigns error "because the court did not require the plaintiff to execute a bond as required by" Sec. 10 of Art. 6049c. This point was not urged in the court below or in the original brief in this court, and can only be considered from the viewpoint of fundamental error.

■■ If it be conceded, arguendo, that the invoked requirement has application to final judgments cancelling permits to drill under the exception to Rule 37 "to prevent confiscation of property," we overrule the assignment upon two grounds: (1) having made no request to the trial court for an order requiring the bond, but, on the contrary, having elected to supersede the judgment in its entirety, thus suspending the operation of the injunction until the final disposition of the case on appeal, Allen waived whatever rights he may have had to require the bond; (2) the injunctive feature of the judgment having been superseded both by Allen and the Commission, the error (if error) in not requiring the bond was harmless.

Since this point is also raised in the Spear case this day decided, Spear v. Humble Oil Refining Co., Tex.Civ.App., 139 S.W.2d 212, and will no doubt be raised in other Rule 37 cases hereafter, the writer deems it not inappropriate to express his views upon a proper construction of this statute in this regard, although the above holding disposes of the question as it affects this case.

Chapter 28 of the General Laws of 1935, which amended sections 10 and 11 of Art. 6049c, Vernon's Ann.Civ.St., was passed at a time when hot oil was sought to be moved beyond the jurisdiction of the Texas courts, first under ex parte temporary injunctions, and later under ex parte temporary restraining orders. The latter were then thought, no doubt, to be nonappealable.

See the eight cases decided by this court in 80 S.W.2d pages 494–512. Railroad Commission v. Real, Tex.Civ.App., 80 S.W.2d 494; Railroad Commission v. Burnham, Tex.Civ.App., 80 S.W.2d 496; Railroad Commission v. Tyler Texas Oil Co., Tex.Civ.App., 80 S.W.2d 500; Railroad Commission v. Linzie Refining Co., Tex. Civ.App., 80 S.W.2d 504; Railroad Commission v. Archer, Tex.Civ.App., 80 S.W. 2d 506; Railroad Commission v. Bradshaw, Tex.Civ.App., 80 S.W.2d 508; Railroad Commission v. Primrose Petroleum Co., Tex.Civ.App., 80 S.W.2d 509; Railroad Commission v. Phœnix Refining Co., Tex. Civ.App., 80 S.W.2d 510.

■ The primary object of the amendment was to put a stop to these abuses, as will appear from the emergency clause of the act, Acts 1935, c. 28, § 4, which reads: "The fact that the agencies charged by law with the duty of enforcing the conservation laws of this State have been hampered by the issuance of temporary orders restraining them in the performance of their duty and in the enforcement of their orders without being accorded notice and hearing before such injunctions have been issued, and the fact that the effect of many such restraining orders has been to dispose of the subject matter of such suits prior to a determination on the merits of the matters presented by the litigation, and the fact that the public welfare requires that there be a speedy remedy to prevent the non-observance of the requirements of the statutes with reference to notice and hearing in such matters, create an emergency, etc."

It is to be noted that Sec. 11 expressly gives the right of appeal from temporary restraining orders as well as other characters of injunctions; and authorizes the Courts of Civil Appeals and the judges thereof to "issue writs of prohibition, mandamus, and injunction to prevent the enforcement of any order or *judgment* of any trial court or judge granting any character of injunctive relief without notice and hearing in violation of the requirements of Section 10, Chapter 26, Acts of the First Called Session of the Forty-second Legislature, as amended by this Act." (Italics supplied in this and subsequent quotations.)

Sec. 10 is quite long and it is not believed necessary to quote it in full. An analysis of its provisions will, it is thought, suffice.

The first clause relates to the subject of notice to the Commission and hearing

which are expressly required as a condition precedent to any injunction "whether temporary restraining order, temporary injunction, *permanent injunction,* or other character of injunctive relief." The second clause makes rules, regulations and orders of the Commission prima facie valid. The remaining provisions of the section relate to the bond and require that "before any *order* granting *any character of injunctive* relief against any such statute or against any such rule, regulation, or order of the Commission shall become effective the plaintiff shall be required by the court to execute a bond * * * reasonably sufficient to indemnify all persons when [whom] the court may find from the facts proven will suffer damages by reason of the .violation of the statute, rule, regulation, or order complained of, such persons to be named in the order of the judge when the amount of the bond is fixed by the court and entered of record." The remaining portions of the section relate to the considerations affecting amount of the bond and authority of all persons named in the order to sue thereon; and give to all parties interested in the subject matter of the suit the right to intervene.

It is significant that the provisions of Sec. 10 relating to notice and hearing expressly include "permanent injunction," and those of Sec. 11, relating to the same subject, use the expression "order or *judgment* of any *trial court* or judge [thereof]"; whereas, the provisions of Sec. 10 relating to the bond are confined to "any *order* granting any character of injunctive relief," omitting altogether the expressions "permanent injunction" and "judgment" used in the above-quoted provisions relating to notice and hearing. There is a clear legal distinction between an "order" granting injunctive relief and a "judgment" granting a perpetual injunction. The former is merely interlocutory, preserving the status quo or protecting the rights of litigants pending decision on the merits; whereas, the latter is a final adjudication of the rights of the parties, subject only to the right of appeal pending which full protection to the rights of the party affected by the permanent injunction is secured by the right to supersede. The legislature is charged with knowledge of the legal meaning of these terms; and in this instance manifestly used them advisedly in the manner in which they were employed in the two situations—that of notice and hearing on the one hand, and that of bond on the other.

Moreover, this act was passed with reference, generally, to aid enforcement of the gas and oil conservation laws, and the bond provisions were for the protection of all persons who might be injuriously affected by suspending the operation of conservation statutes and the rules, regulations and orders of the Commission made pursuant thereto, whether they be parties to the litigation or not. The bond was to be in an amount sufficient to protect all parties who the court should find "from the facts proved" might be injured by such suspension. It is further to be noted that the injunctive "order" was not conditioned upon the execution of the bond, but only its effectiveness. The bond provision was clearly enacted to prevent suspension of statutes and Commission rules, regulations and orders affecting conservation pending final determination of their validity without ample protection to everyone who might be injured by such suspension. It seems clear to the writer that the bond provision was not intended to apply to final judgments setting aside orders of the Commission. All interested parties were given the right to intervene, and the rights of all parties litigant pending appeal were amply protected by the right to supersede.

There is another view of the subject which has peculiar application to the case at bar. As already observed the perpetual injunction was merely an enforcement remedy. The main object of the suit was to annul the order granting the permit. The bond provision could have no reference to that portion of the judgment in any event. Unless superseded, it was effective from its date as an annulment of the order, and production from the well would be illegal and in violation of the judgment, regardless of whether there had been any permanent injunction or whether the permanent injunction were ineffective until bond were given.

The trial court's judgment is affirmed. Affirmed.