## SPEAR et al. v. HUMBLE OIL & REFINING CO.

### No. 8958.

Court of Civil Appeals of Texas. Austin.

March 20, 1940.

Rehearings Denied. April 17, 1940.

. Gerald C. Mann, Atty. Gen., and Edgar Cale, Asst. Atty. Gen., for appellant Railroad Commission.

Felts, Wheeler & Wheeler, of Austin, for appellant Angus B. Spear.

R. E. Seagler and H. E. Bell, both of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellee.

BLAIR, Justice.

This is a Rule 37 case. It involves the validity of the special permit to drill well No. 2 on a 1-acre tract of land out of the Mary Van Winkle Survey, Gregg County, in the East Texas Oil Field. The permit to drill the second well on the 1-acre tract was granted appellant, Angus B. Spear, the lessee of the oil and gas estate in the land, as an exception to the

general spacing distances prescribed by Rule 37, on the recited ground that the second well was necessary "to prevent confiscation" of his property. Appellee, Humble Oil & Refining Company, filed this proceeding, attacking the validity of the permit on the usual grounds raised in the numerous Rule 37 cases which have come before this court, and being in substance as follows:

1. That the second well on the 1-acre tract was not necessary to prevent confiscation of appellant's property because well No. 1 gave the tract a drainage advantage over the surrounding area and adjoining lands and was already drilled to a greater density and had a higher allowable production per day per acre than the adjacent area.

2. That well No. 1 on the 1-acre tract will produce during the life of the oil field in excess of the reasonable amount of oil underlying it.

At the conclusion of the evidence the trial court instructed a verdict for appellee, and rendered judgment thereon declaring the permit to drill said well No. 2 to be void, and perpetually enjoined appellant from further drilling or attempting to drill the well and from further operating, producing or attempting to produce oil and/or gas therefrom. From which action of the court appellant and the Railroad Commission have appealed.

Appellants raise as fundamental error the failure of the trial court to require the appellee to execute the bond required by the provisions of Art. 6049c, R.S.1925, as amended by Acts 1935, 44th Leg., p. 74, Chap. 28, Sec. 1, Vernon's Ann.Civ.St. art. 6049c, the material portion of which reads as follows: "* * * provided further, that before any order granting any character of injunctive relief against any such statute or against any such rule, regulation, or order of the Commission shall become effective the plaintiff shall be required by the court to execute a bond with good and sufficient sureties in an amount to be fixed by the court reasonably sufficient to indemnify all persons when [whom] the court may find from the facts proven will suffer damages by reason of the violation of the statute, rule, regulation, or order complained of, such person to be named in the order of the judge when the amount of the bond is fixed by the court and entered of record; provided further, that the finding of the court that any party is likely to suffer damage shall not be admissible as evidence of damages in any suit on such bond. In determining the amount of such bond it shall be the duty of the judge to take into consideration all of the facts and circumstances surrounding the parties and the ability of the plaintiff to make such bond in order to determine the amount and the reasonableness thereof under the facts and circumstances. Any bond made or executed by any bonding or surety company shall be by some company authorized to do business in Texas. Such bond shall be made payable and approved by the judge of said court and shall be for the use and benefit of and may be sued upon by all persons named in said order who may suffer damages by reason of the violation of such statute, rule, regulation or order. Upon motion and for good cause shown, the court, after notice to the parties, may from time to time increase or decrease the amount of such bond, and may add new beneficiaries, and may require new or additional sureties as the facts may justify."

This contention of appellant has been overruled by the majority view of this court on this day upon the same grounds herein urged, in the case of Allen v. Gulf Oil Corporation, 139 S.W.2d 207, to which reference is here made.

It is the writer's view that Art. 6049c, supra, provides the only method for review of an order of the Commission granting a permit to drill an oil well, and such action "is a special * * * action to enforce a right which exists only by statute." Gulf Land Co. v. Atlantic Ref. Co., Tex.Sup., 131 S.W.2d 73, 82. Therefore, one seeking to exercise this statutory right must reasonably comply with this statute. And since the statute specifically requires the trial court to hold a hearing and to fix a bond before it can grant "any character of injunctive relief," an order granting injunctive relief without compliance with this statute is void; and the order granting the injunction should be set aside and the injunction be dissolved.

The writer does not agree with the limited scope of construction which the majority view imposes upon the statute commanding the trial court to require a bond "before any order granting any character of injunctive relief" shall be effective.

Neither the caption nor the emergency clause limits the power to grant injunctive relief only in cases where notice has

not been given to the Commission; but to the contrary both use broad and comprehensive language and show that the legislature intended to require the bond before "any character of injunctive relief" shall be issued against any statute, rule, regulation, or order of the Railroad Commission relating to oil and gas matters, or at least before such injunctive relief shall become effective. It is a matter of common knowledge that all sorts of injunctive relief was being granted against the conservation statutes, and the rules, regulations and orders promulgated and issued thereunder by the Commission, with and without notice, at the time the legislature passed the broad and comprehensive statute in question, which specifically declared that all such statutes, rules, regulations and orders to be prima facie valid. The mere fact that Courts of Civil Appeals, or the judges thereof, are given power to issue writs of prohibition, etc., against a trial judge granting any such injunctive relief only where issued against the Commission without notice, is manifestly only one purpose of the statute; and such provision has no relation to the provisions of the statute commanding the trial court to require a bond before he shall issue "any character of injunctive relief." And the language, "any character of injunctive relief", refutes any suggestion that the bond was only required in cases where temporary restraining orders or injunctions are issued.

Nor does the fact that one may supersede the injunctive order have anything to do with the construction of the statute. The supersedeas is for the benefit of the party in whose favor the injunctive relief has been granted; whereas, the provisions of this statute are for the benefit of the party against whom the injunction has been granted, and who holds a prima facie valid order of the Commission.

Nor does any language of the statute justify the minute or hairsplitting legal distinction between an "order" granting "any character of injunctive relief" and a "judgment" granting "any character of injunctive relief." Manifestly, the statute uses the word "order" and the word "judgment" interchangeably. And to attribute to the legislature the knowledge or the presumption that it was making such minute or hairsplitting legal distinction between an injunction issued on an "order" and one issued on a "judgment" is indeed too great a strain upon credulity. And particularly is this so as to the instant statute, which clearly shows the intention of the legislature to use the words "order" or "judgment" interchangeably. The declared purpose of the statute is to inhibit the granting by a trial judge of "any character of injunctive relief" either by "order" or "judgment," without requiring the bond to be filed, and the injunctive relief granted without the bond should under express provisions of the statute not "become effective" until the bond is filed. This dissent applies to the instant case and also to the Allen case, supra.

The injunctive relief granted is merely incidental to the enforcement of the judgment cancelling and annulling the order of the Railroad Commission granting the permit to drill the well in question, the validity of which is the subject matter of this suit, and we pass to a consideration of the attacks made upon the judgment cancelling and annulling the permit to drill the well.

The permit to drill the well was granted by the Commission upon the sole ground "to prevent confiscation of property" and under that exception to the general spacing provisions of Rule 37. Under the majority view, this issue is controlled by the recent decision of the Supreme Court in the Gulf Land Company case, supra.

█ Appellant first contends that the trial court erred in instructing a verdict for appellee because the undisputed proof showed that the 1-acre tract in question was composed of approximately a $\frac{5}{8}$-acre tract deeded by appellant Spear to Herbert Ector in 1920, and approximately a $\frac{3}{8}$-acre tract, of which Spear is the fee owner; that well No. 2 is located on a $\frac{3}{8}$-acre tract which has no well on it, well No. 1 having been granted and drilled on the $\frac{5}{8}$-acre Ector tract; and that appellee did not by pleadings nor proof negative the fact that the $\frac{3}{8}$-acre tract had not been segregated from a larger tract susceptible of being developed as a whole, subsequent to the discovery of oil in the East Texas Field, and that such larger tract, including the segregated tract and when considered as a part of the larger tract, did not need the additional well to prevent confiscation of appellant's property. This proposition cannot be sustained for two reasons. In the first place, the Commission never passed upon whether the $\frac{3}{8}$-acre tract was entitled to be developed separately from the $\frac{5}{8}$-acre tract; and in consequence the courts are without power to pass upon the question.

Gulf Land Company, supra. The evidence shows that the ⅝-acre tract was deeded in fee to Ector by Spear in 1920, and that the field notes to it did not close. Spear and Ector joined in the execution of a mineral lease on the two tracts in 1931, describing the land as "one acre, more or less." The lease was thereafter assigned in undivided interests until finally on February 19, 1934, all the undivided interests had been assigned to appellant Spear. Thereafter, on May 28, 1935, Spear filed his first application for a permit to drill well No. 2 on "Lease Ector," containing "number of acres, 1," and the plat accompanying the application showed the tract to be one entire tract of 1 acre. This application was refused, and in June or July, 1937, was again renewed, but again refused; and the order denying the permit referred to it as well No. 2 on Ector 1-acre. To the same effect is the application and plat filed on December 20, 1937. The last application filed by Spear was in July, 1938, and applied for a permit to drill well No. 2, "fee owner, Ector," "number of acres, 1 plus," and the accompanying plat showed it to be an entire tract of one acre which plat had designated thereon, "Angus B. Spear-Ls.— Ector 1 acre." The notice of the hearing on this application designated the tract likewise; and there is nothing in the record to show that Spear in his application before the Commission ever claimed to own the fee title in the west ⅜-acre tract, or that the 1-acre on which the application was made was not a part of the entire tract; and the Commission's order granting the permit referred to the well as well No. 2 on the Ector 1-acre tract. Thus it clearly appears that the Commission passed upon the application as a 1-acre tract considered in its entirety and not as being owned separately by Spear and Ector in undivided fee interests; and under the decision in Gulf Land Company case, supra, the courts are not permitted to pass upon a fact question which the Commission itself has not passed upon, because to do so would simply substitute the courts for the Commission.

In the second place, and under the facts above stated, Spear clearly waived his rights, if any he had, to have the ⅜-acre tract which he owned in fee developed as a separate unit from the ⅝-acre tract; or to have it developed as a part of the adjoining 93-acre tract which Spear owned; or as a separate tract segregated from that tract prior to the discovery of oil in the East Texas field. Ida Richey et al. v. Shell Pet. Corp., Tex.Civ.App., 128 S.W.2d 898.

Under the rule announced in the Gulf Land Company case, supra, the evidence showed as a matter of law that well No. 2 on the 1-acre tract was not necessary to prevent confiscation of property; but to the contrary showed as a matter of law that the one well on the 1-acre Ector lease was sufficient to recover the oil underlying the lease as to the date of the trial, and in the future, if no changed conditions occurred in that area.

On the trial of the case numerous exhibits were offered by appellee, consisting of various oil and gas leases, deeds, assignments, transcript of Railroad Commission files, certain maps and plats showing the area in question with the location of the two wells on the Spear tract, and the location of wells on the adjacent tracts. In addition, several witnesses, expert engineers, geologists, and petroleum engineers, testified with regard to the number of wells in the area, the drainage from said wells and from the 1-acre tract, and other evidence pertinent to the issue as to whether appellant with the one well on the Ector tract had a fair opportunity to recover all of the recoverable oil lying underneath the tract.

The substance of the testimony of the experts both for appellant and appellee is that the 1-acre tract has a drainage advantage over adjacent lands; that the well in question is not an offset well; and that the 1-acre lease with one well has a density and allowable per acre of more than 2 to 1 over each adjacent lease, except the one to the north. That it has an advantage over a surrounding eight times area extending equidistant from the Spear lease, and a 3 to 1 density and allowable per acre advantage over the average adjacent leases covering an eight times circular area. The evidence shows that no particular underground condition exists on the Ector lease as to why it should have been granted the additional well.

It is true, as pointed out by appellant, that its expert witness Hudnall testified that because of certain conditions in the producing sand underlying the 1-acre tract, the drilling of this additional well would result in the recovery of additional oil which would not otherwise be recovered. This under the majority view relates solely

to the question of waste and not to the question of confiscation of property; that the Commission did not grant the permit upon the ground of waste; and that under the Gulf Land Company case, supra, that question cannot be considered on this appeal and is not involved in this appeal.

The writer does not agree with this view; but is of the view that if appellant can recover more oil by drilling the well, which fact was not controverted, then the refusal to permit him to do so amounts to the confiscation of his oil left in the ground. In such situation, appellee would have to allege and prove that it had been refused the right to drill its lands to equal density with the 1-acre tract before it could stop the drilling of the well which would produce more oil for appellant, and without which his oil would be left in the ground and never recovered. Ortiz Oil Co. v. Deep Rock Oil Corp., Tex.Civ.App., 112 S.W.2d 210, writ dismissed. Such was the "correlative right" of the parties, which is often referred to as the remedy of self-help; and which right was so ably and well established by Mr. Justice Greenwood in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. It is also manifest, if appellant is allowed to recover only the oil that may have been originally under his land, then he is denied the right to recover the oil which migrates to his land, which right of recovery the Supreme Court in the Stephens County case specifically held all landowners were entitled to.

█ In this connection, the majority do not sustain the remaining contention of appellant raising the question that it was necessary for appellee to allege that it would not be able during the producing life of the field and the wells on its tract to recover through such wells the amount of oil equivalent to the amount of oil beneath such tracts; nor to show injury to its private property rights sufficient to call for the intervention of the court of equity. It is the majority view that this question has been raised in numerous cases and that it has been overruled by this court; and that the Supreme Court has dismissed and refused writs of error in such cases; and deem the matter as being foreclosed by such decisions. The writer's view on the matter is set forth in the above discussion of the correlative right of the parties.

Complaint is also made that the judgment perpetually enjoins appellant from forever producing the well, even under changed conditions. This question has been determined adversely to appellant in the Allen case, supra, and need not be further discussed.

The judgment is affirmed.

BLAIR, J., dissents as herein set forth.

Affirmed.