Reversed and Rendered and Opinion filed April 5, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01008-CV

___________________

 

U.S. Denro Steels, Inc. d/b/a Jindal United
Steel Corp., SAW Pipes USA, Inc., and JSW Steel (USA) Inc.,
Appellants

 

V.

 

Ed D. Lieck, Appellee



 



 

On
Appeal from the 253rd District Court

Chambers County,
Texas



Trial Court Cause No. 23624

 



 

 

OPINION

            In
this breach-of-contract case, we construe an attorney’s contingency-fee
agreement with his corporate clients.  The attorney sued his clients, alleging
that they failed to pay him a percentage of their assets.  The trial court
granted traditional summary judgment in favor of the attorney and awarded him
nearly $13.5 million plus interest and costs.  Under the unambiguous terms of
the contract, however, the parties agreed to pay the attorney only a percentage
of the amount awarded and recovered in the lawsuit in which he represented
them.  Because his clients were awarded nothing in that suit, we reverse and
render judgment that the attorney takes nothing.  

I.  Background

            U.S. Denro Steels, Inc.
(“Denro”) owned and operated a steel plate mill in Chambers County; SAW Pipes
USA, Inc. (“SAW”) owned and operated an adjacent pipe mill.[1]  In 1998, Denro
and SAW opened revolving credit accounts and granted the lender a security
interest in all of their property and property interests.  Foothill Capital
Corporation later acquired the loans of $850,000 to SAW and $6.5 million to
Denro (the “Foothill loans”) and assigned them to Klöckner Steel Trade, GmbH
(“KST”).[2] 
Denro and SAW acted as guarantors of one another’s loans, and each company
granted KST security interests in its own property as collateral.

            On July 5,
2001, SAW as borrower and Denro as SAW’s guarantor acknowledged SAW’s default
and indebtedness of $328,313.72 on its Foothill loan.  On the same date, Denro
as borrower and SAW as Denro’s guarantor acknowledged Denro’s default and
indebtedness of $5,393,658.64 on its Foothill loan.  At that time, a separate
company, Jindal Iron & Steel Co., Ltd. (“JISCO”),[3] was indebted to
the same lender, KST, for $22.8 million (“the JISCO Debt”).  In exchange for
forbearance on SAW and Denro’s defaults, SAW agreed to act as guarantor of the
JISCO Debt.  

            In November
2001, SAW entered into a Master Pipe Agreement with Southern Texas Steel, LLC
(“Southern”), and Denro entered into a Master Plate Agreement with the same
company.  Under these agreements, Southern was to be the exclusive provider of
steel slabs for Denro’s plate mill to process into steel plates.  Southern sold
some of the steel plates, and sent some for further processing at SAW’s pipe
mill; the finished pipe also was then sold.  According to Denro and SAW,
Southern was KST’s agent and improperly converted Denro and SAW assets worth more
than $14 million..  

A.        The Southern
Suit

            When
Southern announced in August 2003 that it no longer would provide steel for their
mills, Denro and SAW filed suit in Chambers County against Southern, KST, and related
companies (Cause No. 20694, the “Southern suit”).  Allan Van Fleet was
their lead counsel.  They retained Ed Lieck as local counsel in December 2003,
but the parties did not execute a fee agreement until February 22, 2006.  In
the agreement, they agreed to pay Lieck a percentage of the “recovered
judgment(s) awarded” in the Southern suit.  Specifically, they agreed to
pay him 10% of the first $50 million and 5% of the amounts over $50 million
awarded and recovered in the suit. 

            In June
2004, Southern filed counterclaims for breach of the Master Pipe Agreement and
Master Plate Agreement.  The following month, KST filed a notice of its intent
to foreclose on SAW’s pipe mill, but withdrew the notice after SAW applied for
an injunction.  In March 2005, KST again filed a notice of its intent to
foreclose, and SAW and Denro again applied for a temporary injunction.  Finding
that an injunction was necessary to preserve the status quo during the
litigation, the trial court temporarily enjoined KST and Southern from
foreclosing against the pipe mill.

B.        The
JISCO Arbitration and Settlement

            Meanwhile,
KST initiated arbitration proceedings in Stockholm to collect the JISCO Debt
directly from the primary obligor.  In its award of September 4, 2006, the
arbitral tribunal concluded that JISCO owed KST more than $20.8 million.  JISCO
initially appealed the award, but JISCO and KST later settled their disputes.  They
agreed that JISCO would pay KST approximately $22.9 million, and the parties
would dismiss with prejudice the arbitration award, the appeal, and pending litigation
between them in Belgium, Holland, India, and New York.  By settling its debt to
KST, JISCO eliminated SAW’s liability to KST as JISCO’s guarantor.  

C.        The Southern
Settlement

            SAW and
Denro also settled their disputes with KST and Southern.  SAW and Denro agreed
to make a payment of $1.5 million on the Foothill loans, and all four parties
agreed to release all claims in the Southern suit.  By joint motion of
the parties, the Southern trial court dismissed all claims in the suit
with prejudice on June 7, 2007.  

D.        Lieck’s
Suit

            When Lieck
learned that the Southern suit had settled, he sued Denro and SAW for
breach of his contingency-fee contract.[4] 
Denro and SAW moved for traditional summary judgment on the ground that the
parties agreed Lieck would be paid a percentage of any recovered judgment awarded
in the Southern suit.  They argued that because Denro and SAW were
awarded nothing, Lieck was due nothing.  Lieck also moved for traditional
summary judgment, arguing that under the terms of the contingency-fee
agreement, he was entitled to a percentage of the one billion dollars
that the March 2005 temporary injunction in the Southern suit was worth
to Denro, SAW, and a third company he identified as Jindal Enterprises LLC,
d/b/a Jindal Stainless Corporation.  

            The trial
court, Judge Chap Cain, denied Denro and SAW’s motion and granted Lieck’s
motion except as to the amount of damages.

            Lieck then
moved for traditional summary judgment as to the amount due him under the
contingency-fee contract.  He argued that he was entitled to 10% of the fair
market value of SAW’s assets under $50 million, and 5% of fair market value of
SAW’s assets over $50 million.  Based on evidence that the fair market value of
SAW’s pipe mill, equipment, and stock was at least $219.9 million on the day
the claims in the Southern suit were dismissed with prejudice, he asked
the trial court to award him $13,495,000.00, together with pre- and
post-judgment interest.  

            Fifteen
months after granting summary judgment as to liability, the trial court granted
Lieck’s motion as to the amount of damages.  The judgment became final two
weeks later when the trial court struck Denro and SAW’s counterclaims and severed
Lieck’s pending claim for attorneys’ fees and his motion for sanctions.  The
trial court denied Denro and SAW’s motion for new trial, and they superseded and
appealed the judgment.

II.  Standard of Review

            In the
dispositive issue in this case, Denro and SAW assert that the trial court erred
in denying their motion for summary judgment and granting summary judgment in
Lieck’s favor.  Traditional summary judgment is proper only when the movant
establishes that there is no genuine issue of material fact and the movant is
entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Browning v. Prostok, 165 S.W.3d 336, 344
(Tex. 2005).  When we review the rulings on cross-motions for summary judgment,
we review the evidence presented by each party, determine de novo all questions
presented, and render the judgment the trial court should have rendered.  Gilbert
Tex. Constr., L.P. v. Underwriters at Lloyd’s London, 327 S.W.3d 118, 124
(Tex. 2010) (sub. op.); Tex. Mun. Power Agency v. Pub. Util. Comm’n of Tex.,
253 S.W.3d 184, 192 (Tex. 2007).  

III.  Analysis

            When
interpreting a contract, our primary concern is to ascertain and give effect to
the written expression of the parties’ intent.  Seagull Energy E & P,
Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006).  By this
approach, we “strive to honor the parties’ agreement and not remake their
contract by reading additional provisions into it.”  Gilbert Tex. Constr.,
327 S.W.3d at 126.  The parties’ intent is governed by what is written in the contract,
not by what one side contends they intended but failed to say.  See id.
at 127.  Thus, “it is objective, not subjective, intent that controls.”  Matagorda
County Hosp. Dist. v. Burwell, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam)
(citing City of Pinehust v. Spooner Addition Water Co., 432 S.W.2d 515,
518 (Tex 1968)).  The intent manifested in the contract’s language “is not
changed simply because the circumstances do not precisely match the scenarios
anticipated” when the contract was formed.  SAS Inst., Inc.v. Breitenfeld,
167 S.W.3d 840, 841 (Tex. 2005) (per curiam).  We therefore give terms their
plain and ordinary meaning unless the contract indicates that the parties
intended a different meaning.  Dynegy Midstream Servs., Ltd. P’ship v.
Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009).  

We do not consider only those parts of a contract that
favor one party, City of Keller v. Wilson, 168 S.W.3d 802, 811 (Tex.
2005), but examine the writing as a whole to harmonize and give effect to all of
the contract’s provisions.  Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983).  We also bear in mind the particular business activity to be served, and
when possible and proper to do so, we avoid a construction that is
unreasonable, inequitable, and oppressive.  Frost Nat’l Bank v. L & F. Distribs.,
Ltd., 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); Reilly v. Rangers
Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987).  

            If a
contract is not ambiguous, courts must enforce it as written without
considering parol evidence for the purpose of creating an ambiguity or giving
the contract “a meaning different from that which its language imports.”  David
J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450 (Tex 2008) (per curiam).  A
contract is not ambiguous simply because the parties advance conflicting
interpretations.  Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996).  Instead, we determine whether a contract is
ambiguous by looking to the contract as a whole in light of the circumstances
present when the parties executed it.  Sun Oil Co. (Del.) v. Madeley,
626 S.W.2d 726, 731 (Tex. 1981); The contract is not ambiguous if it can be
given a certain or definite meaning as a matter of law.  Universal Health
Servs., Inc. v. Renaissance Women's Group, P.A., 121 S.W.3d 742, 746 (Tex.
2003).  

A.        The
contract is not ambiguous.

            The contract
at issue in this case is a simple contingency-fee contract less than two pages long,
containing just three provisions.  Its relevant language is as follows:

            This will confirm the terms of our agreement
between myself, Ed D. Lieck, . . . [hereinafter referred to
as “Local Counsel”) and [Denro] and [SAW], (hereinafter referred to as
“Plaintiffs”).

1.         Parties[’] Agreement.  Plaintiffs agree
that Local Counsel will accept responsibility for local duties in Cause No.
20694, [the Southern suit], in the District Court of Chambers District[[5]] [sic]. . . .

. . .

3.         Local Attorney’s Fees.  Local Counsel
shall receive ten (10%) percent of any and all recovered judgment(s) awarded in
the aforementioned case up to the first fifty million ($50,000,000.00)
dollars.  Thereafter Local Counsel shall receive five (5%) percent of any and
all remaining recovered judgment(s) awarded in this case.  

            Thus, to
establish the amount owed to Lieck, one need only locate the relevant
“judgment,” identify what was “awarded” to Denro and SAW in that judgment, and
determine the extent to which the judgment awarded was actually “recovered.” 
Of the first $50 million awarded to Denro and SAW in the judgment and actually
recovered, Lieck is entitled to ten percent.  If the trial court awarded Denro
and SAW more than $50 million in the judgment and they actually recovered more
than $50 million of that award, then Lieck would be entitled to an additional
five-percent share of the additional sum recovered.

B.        Lieck’s
fee is based only on the June 7, 2007 judgment in the Southern suit. 

            Identifying
the relevant “judgment” is straightforward.  The parties expressly agreed that
Lieck’s fee was a percentage of the “recovered judgment(s) awarded in the
aforementioned case.”  (emphasis added).  They also identified the parties Lieck
would represent—Denro and SAW—and the only proceeding in which he would
represent them—the Southern suit, Cause No. 20694 in the District Court
of Chambers County.  Thus, Denro and SAW agreed to pay Lieck, and Lieck agreed
to accept payment, based solely on the judgment in the Southern suit.

            That
judgment provides in its entirety as follows:

            On this day came to be heard the Parties’ Joint
and Agreed Motion to Dismiss with Prejudice.  The motion is GRANTED.

            It is, therefore, ORDERED that (1) each
and every of each of the Parties’ claims and causes of action in this lawsuit
are DISMISSED WITH PREJUDICE and (2) all attorneys’ fees, expenses, and
costs of court are to be borne by the Party that incurred them.

            It is so ORDERED.

            Like the
contingency-fee contract, the judgment is unambiguous: the trial court awarded
the parties nothing.  Thus, Lieck was entitled to nothing.  See Bankers Home
Bldg. & Loan Ass’n v. Wyatt, 139 Tex. 173, 162 S.W.2d 694 (1942)
(explaining that an unambiguous judgment is to be construed as it was written).
 

B.        The “Van Fleet memorandum” does not alter the terms of the
parties’ agreement.

            Many of Lieck’s arguments for greater
compensation rely at least in part on an unsigned memorandum apparently written
to Denro and SAW by Allan Van Fleet, their lead litigation counsel.  The “Van
Fleet memorandum” outlines the history of the Southern suit through
February 7, 2007.  It contains no reference to Lieck or the contingency-fee
agreement, and does not purport to alter the agreement’s unambiguous terms.  

            According to Lieck, the memorandum
establishes that Denro and SAW’s “real goal” was to “void [the] security
agreements. . . .  That is what they wanted, and that is exactly
what they got at the end of the day.”  This argument misses the point.  The
question before us does not focus on what Denro and SAW wanted; rather, it
focuses on what Denro, SAW, and Lieck agreed in their contract.  They
agreed that Lieck would provide legal services as their local counsel in one
specific lawsuit, and they would pay him a percentage of the amount that was
both awarded in the judgment and recovered.  

C.        Denro and SAW did not agree to pay Lieck a percentage of a recovery.

            In a related
argument, Lieck contends he is entitled to a percentage of what Denro and SAW
ultimately “recovered,” whether directly or indirectly, whether through this
suit or otherwise.  In support of this position, he asserts that “[t]he phrase
‘recovered judgment(s) awarded’ has never been construed by a court, but the
word ‘recovery’ has.”  He then interprets the fee agreement in light of the
word recovery, and relying on cases in which courts addressed that
word’s meaning.

            That
argument has many flaws, but it is sufficient to mention just one: the word recovery
never appears in the contingency-fee agreement.  The parties instead agreed
that Lieck would be paid a percentage of the “recovered judgment(s)
awarded.”  Recovered and awarded are adjectives used to modify
the word judgment.[6] 
And the word judgment has been construed by Texas courts.

            “A judgment
is the final consideration and determination of a court of competent
jurisdiction on the matters submitted to it.”  Speer v. Stover, 711
S.W.2d 730, 734 (Tex. App.—San Antonio 1986, no writ).  Its function “is to
conclude the controversy between the parties.”  Lindley v. Flores, 672
S.W.2d 612, 614 (Tex. App.—Corpus Christi 1984, no writ) (citing Jones v.
Springs Ranch Co., 642 S.W.2d 551 (Tex. App.—Amarillo 1982, no writ)); see
also Tex. R. Civ. P. 300
(identifying when “a court shall render judgment”); Tex. R. Civ. P. 301 (“Only one final judgment shall be
rendered in any cause except where it is otherwise specially provided by
law.”).  Because Lieck is an attorney and this contract concerned the legal services
he was to perform in Texas civil litigation, we understand Lieck to have
intended the word judgment to be used in the sense in which it is used
in Texas cases and in the Texas Rules of Civil Procedure.  See
Hewlett-Packard, 142 S.W.3d at 561 (“We construe a contract from a
utilitarian standpoint, bearing in mind the particular business activity sought
to be served.”); see also Exxon Corp. v. Emerald Oil & Gas Co., L.C.,
54 Tex. Sup. Ct. J. 347 (Tex. Dec. 17, 2010) (op. on reh’g) (“It is a well
recognized canon of construction that technical words are to be interpreted as
usually understood by persons in the business to which they relate, unless
there is evidence that the words were used in a different sense.”).  Here, his
clients were awarded nothing in the only judgment at issue.

D.        Denro and SAW did not agree to compensate Lieck based on
the value of the temporary injunction.

            Lieck
additionally argues that he is entitled to compensation based on the temporary
injunction issued in the Southern suit in 2005, but according to the Texas
Supreme Court, “[t]here is a clear legal distinction between an ‘order’
granting injunctive relief and a ‘judgment’ . . . .”  Allen
v. Gulf Oil Corp., 139 S.W.2d 207, 211 (Tex. Civ. App.—Austin 1940, writ
ref’d).  Nothing is “recovered” or “awarded” through a temporary injunction,
because a temporary injunction merely preserves the status quo pending trial on
the merits.  See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex.
2002).  It is an extraordinary equitable remedy.  Moon v. Estate of Moon,
221 S.W.3d 327, 329 (Tex. App.—Texarkana 2007, no pet.).  A temporary
injunction is not a final decision on disputed facts.  Thomas v. Beaumont
Heritage Soc’y, 296 S.W.3d 350, 351 (Tex. App.—Beaumont 2009, no pet.).  Moreover,
the temporary injunction did not survive the final judgment in the Southern suit
dismissing all of the parties’ claims with prejudice; thus, unlike the
judgment, the temporary injunction no longer exists.  See Butnaru, 84
S.W.3d at 204; EOG Res., Inc. v. Gutierrez, 75 S.W.3d 50, 53
(Tex. App.—San Antonio 2002, no pet.) (explaining that the reason a trial date
must be included in the injunction order is “to protect the parties from being
subject to a temporary injunction made permanent by a court’s failure to set
the matter for a final determination on the merits”).

E.        The arbitration and settlement agreement
between KST and JISCO are irrelevant to Lieck’s breach-of-contract claim
against Denro and SAW.

            Lieck also
argues that he is entitled to compensation in connection with the arbitration
and settlement of JISCO’s debt to KST.  This argument is contrary to every term
in the contract.  Denro and SAW are not JISCO; Lieck is not JISCO’s attorney;
the arbitration in Stockholm and the settlement of the claims between JISCO and
KST are not “Cause No. 20694 . . . in the District Court of Chambers [County]”;
neither an arbitration award nor a settlement agreement is a judgment; and a
multimillion-dollar contractual payment to Denro and SAW’s adversary in the Southern
suit is not a multimillion-dollar “recovered judgment awarded” to Denro and
SAW in that action.

F.        Denro and
SAW’s interpretation of the contract is reasonable.

            Lieck further
contends that Denro and SAW’s interpretation of the contract cannot be considered
reasonable because he then would be paid nothing for his services.  But that is
the point of a contingent fee: it is “contingent on the outcome of the
matter for which the services were obtained.”  Tex. Gov’t Code Ann. § 2254.101(1) (Vernon 2008).  An
attorney who works pursuant to a contingency-fee contract bears the risk that
no fee will be paid.  Levine v. Bayne, Snell & Krause, Ltd., 40
S.W.3d 92, 95 (Tex. 2001); Arthur Andersen & Co. v. Perry Equip. Corp.,
945 S.W.2d 812, 818 (Tex. 1997).  We do not consider the contract unreasonable
simply because the foreseeable risk it allocated actually materialized.  

V.  Conclusion

            Denro
and SAW were entitled to judgment as a matter of law.  Because the trial court
in the Southern suit awarded them nothing in the judgment, they were not
contractually obliged to pay Lieck anything.  We therefore reverse the trial
court’s judgment and render judgment that Lieck takes nothing on his
breach-of-contract claim. 

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.

 









[1] Appellant JSW Steel (USA)
Inc. is the successor by merger to both of these companies and is included in
our references to them.  For the sake of clarity, however, we refer to all of
the companies by the names used when these events began.  





[2] KST’s successor is Balli Klöckner
GmbH.





[3] JISCO’s successor is JSW
Steel, Ltd.  The founder of JISCO is related to the founder of Denro and SAW;
the companies themselves are not related.  





[4] Lieck asserted additional
causes of action that subsequently were nonsuited or severed.





[5] Capitalization
normalized.





[6] Lieck also contends that recovered
was used in the contract as a synonym for restored.  But if this
were so, then his fee would be equal to a percentage of the “restored
judgment(s) awarded in the aforementioned case.”  Because Denro and SAW were
not “awarded” a “restored judgment” in the Southern suit, Lieck still
would be owed nothing.