## WARD OIL CORPORATION v. OVERTON REFINING CO. et al.

### No. 8851.

Court of Civil Appeals of Texas. Austin.

June 7, 1939.

Rehearing Denied Sept. 20, 1939.

L. L. James, of Tyler, and Turner, Rodgers & Winn and F. J. Scurlock, all of Dallas, for appellant.

F. W. Fischer and A. A. Garrett, both of Tyler, and Felts, Wheeler & Wheeler, of Austin, for appellee Overton Refining Co.

Gerald C. Mann, Atty. Gen., and Edgar Cale, Asst. Atty. Gen., for appellee Railroad Commission of Texas.

McCLENDON, Chief Justice.

The appeal in this a Rule 37 case, is from a final judgment upholding a permit to drill a second well upon a tract (called Leadell Pool tract) in the East Texas oil field alleged in the application to contain .26 of an acre. The application stated that the permit was applied for and the order stated that it was granted "to prevent confiscation of property."

The evidence shows without contradiction that the tract is fully developed by the one well from the viewpoint of recovering the fair share of recoverable oil in place to which it is entitled. The evidence in this regard is substantially on all fours with that in the recent case of Stanolind Oil & Gas Co. v. Midas Oil Co., Tex.Civ. App., 123 S.W.2d 911, referred to as the Midas case (error dismissed—correct judgment), in which the issues here involved relating to confiscation were fully discussed. It will not be necessary to state the evidence upon this point further than that it shows that with the one well the tract was more densely drilled than any of the surrounding tracts; and that this well had been producing since 1932, had already produced more than the recoverable oil to which the tract was entitled, and would continue so to produce during the life of the field.

Neither the application nor the order referred to the exception to Rule 37 "to prevent waste," and the record shows that no evidence was presented to and no finding made by the Commission thereon. However, under the majority holding of this court which apparently has the sanction of the Supreme Court (Gulf Oil Corp. v. Wood, Tex.Civ.App., 120 S.W.2d 543, error dismissed) the order must be upheld where the evidence is sufficient to support a finding that the well applied for would prevent or lessen waste.

Upon this issue the evidence was in large measure substantially the same as that in the Midas case. This is particularly true as regards practical uniformity in the area in relation to "sand thickness, porosity, permeability, bottom hole pressure, and the distance a key well at open flow would affect the bottom hole pressure," except that this latter distance was given at as high as 4,000 feet instead of from 1,000 to 1,-500 feet as in the Midas case. The effect of such migratory flow upon the situation here was not substantially different from that in the Midas case.

The only substantial evidentiary variation in the two cases is that here the tract in question was only a short distance north or northwest from the London area, which was very densely drilled, thereby causing a low pressure area, disturbing the uniformity of water encroachment from the west, and reducing the ultimate oil recovery from the field by causing "channeling and by-passing."

There were but two witnesses who testified upon this point, both of whom were recognized experts in oil engineering in the East Texas field. One of these was R. D. Parker, for many years in charge of the oil and gas division of the commission, and the other was Fred A. Schell, chief engineer in East Texas field for the Stanolind. The testimony of these witnesses was in substantial accord on all material points, and clearly established that the well in question was not only not necessary to prevent waste, but would tend to produce waste. The substance of this testimony upon this issue, though quite elaborately developed in the statement of facts, may be briefly summarized as follows:

The East Texas field comprises about 135,000 acres with a daily allowable of about 400,000 barrels, or approximately 20 barrels per well per day. The water encroachment due to hydrostatic pressure is from the west. A uniform slow withdrawal from wells equally spaced throughout the entire field would produce a slow and uniform water encroachment, thus lending to the greatest ultimate recovery from the field. Both witnesses testified to excessively dense drilling in the London area, and to the fact that its effect was to cause a low pressure area, and consequently more rapid water encroachment in that direction;

that there were already evidences of "channeling and water fingering" in this area, the effect of which would be to reduce the ultimate recovery from the field. This factual condition is conceded by appellees.

As to what effect an additional well on the tract in question would have upon this situation we quote:

"Q. Mr. Parker, state whether or not in your opinion, from your experience and knowledge of the East Texas oil field and particularly the area in question, the drilling of the second well on the Leadell Pool tract would have any effect either way on the ultimate recovery of the oil in that particular immediate area. A. Well, it contributes its share to an already bad situation from the standpoint of dense drilling that causes a premature encroachment of water which in turn causes waste. That would be one of the effects."

Appellees' contention that the evidence will support a finding that the well applied for would decrease waste is predicated upon testimony of Mr. Schell brought out on cross-examination, in which they sought to establish the proposition that the bad effects of the London area situation would be counteracted by intensive drilling throughout the field.

The upshot of this testimony was that a uniform drilling throughout the field would relieve the situation, but this would not be practical if the density were that of the London area. The other alternative would be to block out the entire field under a uniform spacing arrangement, allocate one well to each spacing unit, and plug all the other wells. Manifestly this would be equally impractical. We are setting out this testimony at some length in an appendix.

We hold that the evidence, viewed from every practical standpoint shows as a matter of law that appellee Refining Company was not entitled to the well in question under either exception to Rule 37,—to prevent confiscation of property, or to prevent waste.

The trial court's judgment is reversed and the cause remanded to that court for a new trial.

Reversed and remanded.

*Upon Appellees' Motions for Rehearing.*

█ Since this cause was decided (June 7, 1939) the Supreme Court (July 26, 1939) has handed down its opinion in Gulf Land Co. v. Atlantic Refining Company, Tex. Sup., 131 S.W.2d 73, holding that where the evidence does not support the permit upon the express exception upon which it is granted (to prevent confiscation of property), it can not be supported upon the other exception (to prevent waste), where the evidence thereon is conflicting. This holding eliminates from the case the issue of waste prevention, and confines the controversy to the issue whether the evidence upon another trial will support a finding that the well was necessary to prevent confiscation of property. Our opinion is modified accordingly.

The motions are overruled.

Overruled.