SHELL PETROLEUM CORPORATION v. RAILROAD COMMISSION OF TEXAS et al.

No. 8935.

Court of Civil Appeals of Texas. Austin.

Feb. 7, 1940.

Rehearing Denied Feb. 21, 1940.

A. E. Groff and R. H. Whilden, both of Houston, and Greenwood, Moody & Robertson, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Edgar Cale, Asst. Atty. Gen., for appellee Railroad Commission.

798

Lee & Porter, of Longview, for appellee Marine Production Co.

McCLENDON, Chief Justice.

This is a rule 37 case. The appeal is from a final judgment refusing to set aside permits to drill two additional wells (Nos. 6 and 7—there were already 5 producing wells) upon a tract of 9.305 acres known as the Marine lease in the East Texas oil field, granted to appellee, Marine Production Company, as exceptions to rule 37 in order "to prevent confiscation of property."

■■ The Marine tract (except that its west line followed the meanders of a creek) was in form a trapezoid; its three straight line lengths being: North, 1,210 ft., east, 345 ft., and south, 1,105 ft. Immediately to the south was the Iron Rock lease, triangular in form (about 1,100 ft. long, about 125 ft. wide at its west end, and terminating in a point at the Marine southeast corner) containing 2.014 acres, and having two producing wells. The position of the Marine and Iron Rock leases with relation to surrounding leases is shown on map accompanying Richey v. Shell Petroleum Corp., Tex.Civ. App., 128 S.W.2d 898, at page 900, error dismissed. Wells 6 and 7 were located in the extreme northwestern portion of the Marine; and the record shows that No. 7 was granted as an equidistant offset to the Ida Richey well on the .67-acre tract to the west (permit for which was set aside in the Richey case above); and No. 6 as an equidistant offset to a Carr well to the north. The record conclusively shows that the Iron Rock lease was a voluntary subdivision of the Marine, and therefore, for the purposes of rule 37, the two leases covered but a single tract. There was also some question raised as to the exact location of the north line of the Marine. The greatest area of the combined Marine and Iron Rock leases under any theory presented is approximately 12 acres; the strip in question to the north of the Marine being .81 acres. For our present purposes it is not material whether the Marine be treated as a separate tract or in conjunction with the Iron Rock; nor whether we take the greatest area permissible under any presented theory. The evidence conclusively shows that without wells 6 and 7 there was some excess drainage from the west and north of the extreme northwestern portion of the Marine; but that this was more than compensated by excess drainage to the Marine from other directions; the net result being that the Marine was already getting more oil from surrounding leases than that drained from its lease. The record also conclusively shows that taking the eight times surrounding area in the form either of a circle or trapezoid, the Marine had a greater density of drilling than that of the surrounding leases. As above stated, these conclusive factual showings apply to the Marine whether considered alone or in conjunction with the Iron Rock, and considering its area as that of any presented theory. The record conclusively shows that neither well 6 nor 7 was necessary to enable the Marine to recover its fair share of the recoverable oil and therefore was not necessary to prevent confiscation of property.

There was a great deal of testimony upon the subject of waste, consideration of which we pretermit under the holding in the Atlantic case. Gulf Oil Co. v. Atlantic Refining Co., Tex.Sup., 131 S.W.2d 73. See also Ward Oil Corp. v. Overton Refining Co., Tex.Civ.App., 131 S.W.2d 700, rehearing opinion; Shell Petroleum Corp. v. Railroad Comm., Tex.Civ.App., 133 S.W.2d 194, error refused.

■ Appellee, Marine, cross-assigns error upon the overruling of its plea in abatement, predicated upon the failure to make the royalty owners parties defendant to the appeal from the Commission orders. Our examination of the many rule 37 opinions delivered by this and other courts fails to disclose that it has ever been suggested that royalty owners are necessary or even proper parties to an appeal from a Commission order granting or refusing a drilling permit. The only interest of the royalty owners is to receive when produced their share of the oil or its proceeds. The lessee is invested with the exclusive right of possession and development. In the drilling and spacing of wells the lessee represents the royalty owners in so far as they may have any interest therein. They were so represented in the making of the applications for the permits and in all proceedings thereunder before the Commission; to which proceedings they were not made parties and in which they did not participate other than by such representation. We hold that the trial court properly overruled the plea in abatement. A closely analogous situation was presented in Railroad Comm. v. Humble, Tex.Civ.App., 101 S.W.2d 614, reversed on another ground, Tex.Sup., 128 S.W.2d 9.

Appellee, Marine, presents a number of other points which have been frequently decided adversely to its contentions. All these have been given our careful consideration; but in view of their obvious want of merit in the light of adjudicated cases, we do not deem it necessary to discuss them. To do so would be but to reiterate previous holdings, thereby adding to the volume of reported cases to no useful purpose.

The trial court's judgment is reversed, the orders granting the permits in issue are set aside, and production under such permits is perpetually enjoined.

Reversed and rendered.