UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 91-6137
_____

IN THE MATTER OF:  GHR ENERGY CORPORATION,

Debtor.

MEDALLION OIL COMPANY, ET AL.,

Appellants,

versus

TRANSAMERICAN NATURAL GAS
CORPORATION,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____
(August 27, 1992)

Before BRIGHT[1], JOLLY, and BARKSDALE, Circuit Judges.

BRIGHT, Senior Circuit Judge:

This is a case concerning overriding royalty interests granted to Medallion Oil Company and H.S. Finkelstein [Medallion] on a leasehold estate under a farmout agreement between TransAmerican

_____

[1]    Senior Circuit Judge of the Eighth Circuit, sitting by designation.

1

Natural Gas Corporation [TransAmerican] and El Paso Natural Gas Company [El Paso].

Medallion appeals the district court's affirmance of the bankruptcy court's grant of summary judgment, which determined that Medallion's overriding royalty interests in the La Perla Ranch leasehold estate did not survive the termination of the farmout agreement between TransAmerican and El Paso.

In this appeal, Medallion challenges the bankruptcy court's determination that: (1) Medallion's overriding royalties were extinguished by the termination of the underlying farmout agreement and leasehold interest; and (2) Medallion's overriding royalties did not increase commensurate with the increased interest acquired by TransAmerican in the La Perla Ranch. We affirm, but remand for reformation of the bankruptcy court's order.

## I. BACKGROUND

### A. FACTUAL

In 1974, Medallion and Good Hope Refineries, Inc., TransAmerican's predecessor, entered into an agreement whereby TransAmerican would assign to Medallion a one-sixteenth overriding royalty interest in gas and oil production from mineral rights that Medallion would assist TransAmerican in obtaining. In 1975, TransAmerican and El Paso entered into a farmout agreement, for the La Perla Ranch in Zapata County, Texas, under which El Paso granted TransAmerican the right to explore and develop the La Perla Ranch field and to obtain gas leases thereupon.

In 1983, TransAmerican filed Chapter 11 bankruptcy. In order to settle various disputes, TransAmerican and Medallion entered into a settlement [Medallion settlement] in 1987, which recognized a one-sixteenth overriding royalty for Medallion in the net revenues from La Perla Ranch under the 1975 farmout agreement. The settlement also granted Medallion a one and one-half percent overriding royalty on production from certain interests owned by TransAmerican, including the La Perla leasehold estate.

In 1990, TransAmerican and El Paso entered into a settlement [El Paso settlement] of a dispute over a gas purchase agreement that covered certain gas produced from La Perla Ranch. As part of the settlement, TransAmerican terminated all prior agreements between the two parties, including the 1975 farmout agreement and all leases thereunder, and El Paso assigned all of its mineral interest in La Perla Ranch to TransAmerican.

B.    PROCEDURAL

This action arose during the course of TransAmerican's bankruptcy proceeding, when Medallion filed a motion to compel debtor's compliance with the Medallion settlement. In the motion to compel, Medallion alleged that TransAmerican owed it increased overriding royalties because TransAmerican had acquired the La Perla Ranch mineral fee interest in the settlement with El Paso. TransAmerican countered with the argument that it owed Medallion no overriding royalties because the farmout agreement and leasehold interest, upon which Medallion's overriding royalties were based, had been terminated between TransAmerican and El Paso. Both sides

3

filed motions for summary judgment. The bankruptcy court granted summary judgment in TransAmerican's favor and the district court affirmed its holding. This appeal followed.

## II.  DISCUSSION

Our review of a district court's grant of summary judgment is plenary and we apply the same standard as the district court applied. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 177, reh'g denied, 902 F.2d 259 (5th Cir. 1990). Summary judgment is proper only if there is no genuine issue as to any material fact and TransAmerican is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), quoted in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing the evidence, we must view the facts and inferences in the light most favorable to Medallion. Lavespere, 910 F.2d at 178.

On appeal, Medallion argues that the district court erred in holding that its overriding royalties were extinguished by the termination of the 1975 farmout agreement and underlying leasehold estate between TransAmerican and El Paso. First, it contends that when TransAmerican acquired the mineral fee rights, in effect, TransAmerican's leasehold interest merged with El Paso's reversionary interest. Thus, Medallion's overriding royalties in the leasehold could not be wiped out because the concept of merger should not operate to destroy Medallion's interests. In support of its contentions, Medallion relies on portions of the settlement between Medallion and TransAmerican. As part of the settlement, TransAmerican

> agree[d] to assign and convey to [Medallion] an
> overriding royalty interest of one and one-half percent
> (1½%) of all oil, gas, other hydrocarbons, and all other
> minerals . . . produced and saved from or attributed to
> the interests owned by [TransAmerican] . . . as of April
> 23, 1987, at 12:01 a.m., in and to all . . . "Leases," .
> . . "Agreements" and [] all other interests in land
> . . ., in each case covering or consisting of land
> situated in Webb and/or Zapata Counties, Texas, owned by
> [TransAmerican] . . . as of April 23, 1987, at 12:01
> a.m., and any increase in the quantity of interest
> therein owned by [TransAmerican] . . . which is based
> upon any additional or greater interests therein received
> or realized by [TransAmerican] under reversions or other
> terms of any contracts or agreements in existence as of
> April 23, 1987, at 12:01 a.m. . . . .

Schedule A of the Supplement to Stipulation, at 1-2.

> TransAmerican also agreed to

> convey to [Medallion] . . . an overriding royalty
> interest equal to one-sixteenth (1/16th) of the net
> revenue interest earned, acquired or otherwise received,
> and to be earned, acquired or otherwise received, by
> [TransAmerican] . . . under the said Agreement of March
> 18, 1975 [the farmout agreement], with El Paso, as
> supplemented and amended . . . .

Assignment of Overriding Royalty, Attachment to Schedule B of the

Supplement to Stipulation, at 4.

> Both overriding royalties were subject to an extension and

renewal provision, stating that the overriding royalty

> shall also apply, extend to and include each and every
> renewal or extension of an oil and gas lease covered by
> this Assignment which is acquired by [TransAmerican],
> directly or indirectly, prior to or within one (1) year
> of the expiration or termination of said oil and gas
> lease.

Id. at 7; Assignment of Overriding Royalty, Attachment to Schedule

A of the Supplement to Stipulation, at 6.

5

Also, both of Medallion's overriding royalty interests were subject to the following clause, allowing TransAmerican to terminate at will any of its underlying interests:

> It is expressly agreed that operations, if any, on [the lands covered hereby], and the extent and duration thereof, as well as the preservation of such lease by rental payments or otherwise, shall be solely at the will of [TransAmerican].

Id.

Medallion's contention that the El Paso settlement resulted in a merger of the leasehold and reversionary interests is unpersuasive. TransAmerican terminated the leasehold estate and farmout agreement and acquired the mineral fee estate, free and clear of the leases. No leasehold remained in existence, thus, there could be no merger.

"The term `overriding royalty' has a well defined meaning in Texas. It is an interest which is carved out of, and constitutes a part of, the working interest created by an oil and gas lease." Gruss v. Cummins, 329 S.W.2d 496, 501 writ ref n r e (Tex. Civ. App. 1959) (citations omitted). In the case at hand, TransAmerican agreed "to pay an overriding royalty, a certain share of the production, to [Medallion] as consideration for [its] services in procuring a lease on certain lands." 3 W. L. Summers, The Law of Oil and Gas § 554, at 625 (1958).

The bankruptcy court, in response to Medallion's claim that its overriding royalties continued beyond the termination of the underlying leasehold estate and farmout agreement, stated that:

> An overriding royalty interest, because it is carved out of a leasehold interest, is limited in duration to the

6

leasehold interest's life, and the termination of that leasehold estate extinguishes the overriding royalty. <u>Sunac Petroleum Corp. v. Parkes</u>, 416 S.W.2d 798, 804, [<u>reh'g of cause overruled</u>] (Tex. 1967); <u>Keese v. Continental Pipe Line Co.</u>, 235 F.2d 386, 388 (5th Cir. 1956) (unless instrument creating overriding or royalty interest makes express provision to the contrary, the interest continues or ceases with the leasehold estate out of which it is carved and cannot survive termination by surrender or release of the leasehold estate by the owners).

The plain language of the Medallion Settlement shows that Medallion's interest is not perpetuated should the farmout agreement terminate. Nothing in the Medallion Settlement provides that if TransAmerican acquires a fee interest in the La Perla Ranch properties, Medallion's overriding royalty interest would be redetermined to be a non-participating royalty interest applicable to the newly-acquired interest. In fact, the provisions relied upon by the Medallion Group provide that Medallion's overriding royalty interests relate only to TransAmerican's interests in effect as of April 23, 1987, at 12:01 a.m. As of that date, TransAmerican's working interest consisted solely of leasehold interests. Not until January 1, 1990 did TransAmerican's interest in the La Perla Ranch become a mineral fee interest. Moreover, the Medallion Group acknowledges in its Opposition to TransAmerican's Motion for Summary Judgment that its percentages were "carved out of TransAmerican's properties." [citation omitted] Thus, Medallion's overriding royalty interest, because it was carved out of TransAmerican's leasehold interest, was extinguished when TransAmerican's leasehold estate was terminated. <u>See</u> <u>Sunac</u> and <u>Keese</u>, <u>supra</u>.

In addition, the Medallion Group expressly agreed that the preservation of any lease under the Farmout agreement was "solely at the will of [TransAmerican]." This language clearly and specifically allows TransAmerican to relinquish its obligation to pay the Medallion Group the 1-1/2% and 1/16th overriding royalties by merely terminating the lease.

Mem. Op. dated May 14, 1991, at 11-12.

We agree with this reasoning and adopt the bankruptcy court's conclusion that Medallion's overriding royalties did not survive the termination of the leasehold estate and farmout agreement.

7

Second, Medallion argues that because gas production on La Perla Ranch continued unabated, TransAmerican could not surrender the leasehold interest and obliterate Medallion's overriding royalties. In support of this contention it quotes clause two of an oil and gas lease between El Paso and TransAmerican.

> 2. Subject to the other provisions herein contained, this lease shall remain in force and effect for so long thereafter as oil, gas, casinghead gasoline, or any of them is produced from the above-described lands or lands pooled therewith, or for so long as this lease is extended under any subsequent provision hereof.

Exh. B to Exh. D to Affidavit, Bankruptcy Record No. 9541.

In the case of Fain & McGaha v. Biesel, 331 S.W.2d 346, 347-48, writ ref n r e (Tex. Civ. App. 1960), the Court of Civil Appeals of Texas held that, where the lease instrument authorized release of any part of the leasehold, the leaseholder could surrender a portion of the estate and terminate an outstanding overriding royalty interest. The court noted that although production of gas and oil on the leasehold never ceased, it did not "believe this would be material or operate as a distinction in any event." Id. at 347.

In the present case, clause twelve of the lease document expressly authorized TransAmerican to surrender the leasehold.

> 12. Lessee, its successors and assigns, shall have the right at any time to surrender this lease, in whole or in part, to Lessor or its successors and assigns by delivering or mailing a release thereof to the Lessor, and by placing a release thereof of record in the county in which said land is situated, thereupon, Lessee shall be relieved from all obligations, express or implied, of this agreement as to the acreage so surrendered.

Exh. B to Exh. D to Affidavit, Bankruptcy Record No. 9541.

8

The cases cited by Medallion in support of its position are inapposite because the leases therein did not allow the lessee to surrender the lease at will. Further, as noted above in the case at hand, TransAmerican's leasehold interest was to remain in effect so long as production continued, however, the term of the lease was subject to the operation of the other lease provisions, including clause twelve allowing surrender of the lease. Therefore, we hold that TransAmerican was free to terminate the leasehold estate, where the lease language expressly authorized the surrender, and to cut off Medallion's overriding royalties, despite the fact that gas production never ceased on the leasehold.

Finally, Medallion claims that TransAmerican owes it increased overriding royalties because TransAmerican expanded its interest by acquiring El Paso's entire La Perla Ranch mineral fee interest. We hold this argument to be without merit because Medallion's overriding royalty interests depended upon the continued existence of the leasehold estate and farmout agreement. The extension and renewal clause in the settlement agreement provided coverage for new or renewal leases acquired by TransAmerican, not for fee interests. Also, Medallion failed to show that any contract in existence on April 23, 1987 entitled TransAmerican to receive the La Perla Ranch mineral fee in the El Paso settlement. In sum, the termination of the leasehold estate and the farmout agreement between TransAmerican and El Paso, with the consequent extinguishment of Medallion's overriding royalties, precludes

9

Medallion's claim to an increased overriding royalty.  The parties bargained for this result and we will not alter their bargain.

We **AFFIRM** the bankruptcy court's opinion and order, as adopted by the district court's judgment and order; however, we **REMAND** for reformation of the bankruptcy court's order to refine its coverage to exclude interests in the La Perla Ranch, which were not at issue in this case.  In affirming, we note that, at oral argument, Medallion expressly disclaimed reliance upon equitable relief and chose to rely strictly upon the relevant contractual provisions.

**AFFIRMED.**[2]

---

[2]  Medallion's Motion for Extraordinary Relief is hereby denied as moot.