TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00879-CV






H. G. Sledge, Inc. and Railroad Commission of Texas, Appellants



v.



The Prospective Investment and Trading Company, Ltd., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 99-06696, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING







 The issue before us concerns the proper scope of the notice provision of the
Railroad Commission's rule 37 related to well spacing. See 16 Tex. Admin. Code § 3.37(a)(2)
(2000). This dispute arose when the Railroad Commission ("the Commission") denied a
complaint filed by The Prospective Investment and Trading Company, Ltd. ("PITCO"), which
challenged the validity of a drilling permit granted to H.G. Sledge, Inc. ("Sledge"). When Sledge
filed its application for a drilling permit under a rule 37 exception with the Commission, Sledge
did not notify PITCO, an overriding royalty holder on an adjacent tract. PITCO challenged the
validity of Sledge's permit in a complaint, which the Commission denied. PITCO contested the
Commission's denial by filing suit. The district court agreed with PITCO and set aside Sledge's
drilling permit. The Commission and Sledge appeal the district court's judgment. We affirm in
part and reverse in part the district court's judgment, rendering judgment that affirms the
Commission's order, which held PITCO was not an "affected person" entitled to notice of the rule
37 exception application.


FACTUAL AND PROCEDURAL BACKGROUND

 The facts of this case are undisputed. This matter involves two oil wells, Wells
No. 8 and No. 10, situated on adjacent tracts of land, which are subject to the Holly and Holly
B Leases respectively. PITCO's predecessor-in-interest entered into a farmout agreement (1) with
Sledge's predecessor-in-interest and reserved a 5% overriding royalty interest (2) in Well No. 8. 
Currently, PITCO holds this 5% overriding royalty interest and Sledge has the working interest. (3)
As a lessee under the Holly and Holly B Leases, Sledge is the designated operator of both
adjoining tracts. 

 In 1998, Sledge submitted an application to the Commission to drill Well No. 10
on a tract covered by the Holly B Lease. This tract shares a lease line with the Holly Lease tract
where Well No. 8 is situated. Because Well No. 10 was located closer to this line than the
relevant field rules allow, (4) Sledge applied for a drilling permit under an exception to the
Commission's rule 37. Rule 37 requires that all "affected persons" be given notice of applications
filed under the rule and an opportunity for a hearing. Id., § 3.37(a)(2), (3). An applicant like
Sledge, who seeks an exception to the spacing requirement, must provide a list of the mailing
addresses of all "affected persons" who are entitled to receive notice of the request for an
exception. See id. § 3.37(a)(2)(A). Sledge did not report PITCO's overriding royalty interest to
the Commission and waived notice to itself as a designated operator. Without notifying PITCO,
the Commission granted the drilling permit to Sledge. Sledge completed the drilling of Well No.
10 and commenced production.

 After the Commission granted Sledge's permit, PITCO filed a complaint with the
Commission requesting that the agency "initiate a show-cause proceeding requiring Sledge to
show cause why its Holly B Well No. 10 should not be shut in pending a hearing . . . and, upon
such hearing, why the well should not be plugged and abandoned, having not been drilled
pursuant to the rules and regulations of the Commission." The Commission did not place the
complaint on its docket and, after finding no basis for a hearing, denied PITCO's request. PITCO
filed a motion for rehearing with the Commission. PITCO's motion was overruled by operation
of law. See Tex. Gov't Code Ann. § 2001.146(c) (West 2000).

 Subsequently, PITCO filed suit against the Commission in Travis County district
court. PITCO requested that the court revoke Sledge's permit due to insufficient notice and order
that production from Well No. 10 be halted pending the outcome of the proceedings. As lessee
of the adjacent tracts, Sledge intervened to defend the Commission's decision. The Commission
contested the district court's jurisdiction over this case. The district court denied the
Commission's plea to the jurisdiction. After a bench trial, the district court rendered judgment
in favor of PITCO. The court's judgment reversed the Commission's grant of a drilling permit
to Sledge for Well No. 10 and remanded the matter to the Commission to determine whether
Sledge is entitled to a well permit at the current location. The Commission and Sledge appeal this
final judgment. See id. § 51.012 (West 1997). We first address the threshold issue of whether
the district court had jurisdiction to consider this case.


DISCUSSION

Jurisdiction

 A challenge to subject-matter jurisdiction raises a question of law and therefore we
review a district court's ruling de novo. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998). We consider the factual allegations made in good faith by the plaintiff to determine
whether the district court properly exercised jurisdiction. Brannon v. Pac. Employers Ins. Co.,
224 S.W.2d 466, 469 (Tex. 1949). Unless the defendant pleads and proves that the plaintiff's
allegations were made fraudulently to confer jurisdiction, we accept these allegations as true. 
Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1996).

 Specifically, a plea to the jurisdiction contests the district court's authority to
consider a cause of action. Tsumi, Inc. v. Tex. Parks & Wildlife Dep't, 23 S.W.3d 58, 60 (Tex.
App.--Austin 2000, pet. filed) (citing Amador v. San Antonio State Hosp., 993 S.W.2d 253, 254
(Tex. App.--San Antonio 1999, pet. denied), and State v. Benavides, 772 S.W.2d 271, 273 (Tex.
App.--Corpus Christi 1989, writ denied)). The plaintiff bears the burden of alleging facts
sufficient to demonstrate the district court has subject matter jurisdiction. Tex. Ass'n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Unless the face of the petition
affirmatively demonstrates a lack of jurisdiction, the district court must liberally construe the
allegations in favor of jurisdiction. Peek v. Equip. Servs. Co., 779 S.W.2d 802, 804 (Tex. 1989).

 In its pleadings, PITCO asserts jurisdiction under section 85.241 of the Texas
Natural Resources Code and invokes the procedures and standard of review in sections 2001.171
and 2001.174 of the Administrative Procedure Act ("APA"). The parties agree that the APA
itself does not confer jurisdiction. The Commission acknowledges that in suits such as this one,
jurisdiction may be available under section 85.241 of the Texas Natural Resources Code.

 Section 85.241 of the Texas Natural Resources Code provides as follows:


Any interested person who is affected by the conservation laws of this state or
orders of the commission relating to oil or gas and the waste of oil or gas, and who
is dissatisfied with any of these laws or orders, may file suit against the
commission or its members in a court of competent jurisdiction in Travis County
to test the validity of the law or order.



Tex. Nat. Res. Code Ann. § 85.241 (West 1993). As a remedial statute, this section should be
construed liberally. Wrather v. Humble Oil & Ref. Co., 214 S.W.2d 112, 115 (Tex. 1948); City
of San Antonio v. United Gas Pipe Line Co., 354 S.W.2d 217, 224 (Tex. Civ. App.--Austin 1962,
no writ).

 The Commission, however, argues that the letter ruling by the assistant director
of the agency's oil and gas section is "not a Commission law or order as meant by section
85.241." According to its petition, PITCO's suit arises from the Commission's decision not to
consider PITCO's complaint. The Commission denied PITCO's request for a show-cause hearing
in a letter ruling, which stated that the assistant director was "closing . . . [his] file on this
matter." In a subsequent memorandum addressing PITCO's motion for rehearing, the assistant
director recognized that this letter ruling presented a "hybrid" situation. The assistant director
acknowledged that while no hearing was conducted and the letter ruling disclaimed that it was a
final order of the Commission, the ruling was also "not a traditional staff interim ruling" because
it "effectively dismissed PITCO's complaint and no further Commission action on the complaint
was contemplated." The assistant director recommended that the Commission treat PITCO's
submission as a motion for rehearing and deny the motion on its merits.

 PITCO alleges in its petition that the motion for rehearing was overruled by
operation of law. Appellants have not challenged PITCO's factual allegations as fraudulent. 
Consequently, we accept this allegation as true and, for purposes of this proceeding, conclude that
a final order existed.

 Relying on Shell Petroleum v. Railroad Commission, the Commission also argues
that, as a matter of law, jurisdiction does not exist under this section because PITCO is not
"affected." See Shell Petroleum Corp. v. R.R. Comm'n, 137 S.W.2d 797 (Tex. Civ. App.--Austin
1940, no writ). In Shell Petroleum, we noted, "Our examination of the many rule 37 opinions 
 . . . fails to disclose that it has ever been suggested that royalty owners are necessary or even
proper parties to an appeal from a Commission order granting or refusing a drilling permit." Id.
at 798 (emphasis added). PITCO, however, does not contend that its suit is a direct appeal of the
administrative decision to grant Sledge's permit; rather, PITCO's suit arises from the
Commission's decision not to consider PITCO's complaint. Noting that the face of the petition
does not affirmatively demonstrate a lack of jurisdiction and construing section 85.241 liberally,
we sustain the district court's denial of the Commission's plea to the jurisdiction.


Rule 37 Notice Provision

 The question before us therefore is whether the notice provision of rule 37 requires
the Commission to notify an overriding royalty interest holder when its lessee's interest extends
to an adjacent tract for which the permit is sought, entitling the overriding royalty interest holder
to a hearing. The Commission argues that the district court should not have employed a
"substantial evidence" standard of review because this is not an appeal from a contested-case
hearing. Rather, the Commission contends that the only valid posture of this case is as an original
action in the district court. PITCO contends that the substantial evidence standard is appropriate
because the Commission's response to PITCO's complaint constituted a final order. We agree.

 Final orders of the Commission are "deemed to be prima facie valid and subject
to review under the substantial evidence rule." Imperial Am. Res. Fund v. R.R. Comm'n, 557
S.W.2d 280, 284 (Tex. 1977); accord Tex. Gov't Code Ann. § 2001.174; R.R. Comm'n v. Pend
Oreille Oil & Gas Co., 817 S.W.2d 36, 40-41 (Tex. 1991). We review the Commission's legal
conclusions for errors of law and its findings of fact for support by substantial evidence. Tex.
Gov't Code Ann. § 2001.174 (West 2000); (5) Heat Energy Advanced Tech., Inc. v. W. Dallas
Coalition, 962 S.W.2d 288, 294-95 (Tex. App.--Austin 1998, pet. denied). Under this standard
of review, the proper test is whether the evidence in its entirety is sufficient that reasonable minds
could have reached the conclusion that the agency must have reached to justify the disputed action. 
Tex. State Bd. of Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988); Heat Energy
Advanced Tech., Inc., 962 S.W.2d at 295. The issue is whether the agency "acted arbitrarily and
without regard to the facts." Auto Convoy Co. v. R.R. Comm'n, 507 S.W.2d 718, 722 (Tex.
1974).

 We may not substitute our judgment for that of the state agency "on questions
committed to agency discretion. . . ." Tex. Gov't Code Ann. § 2001.174; accord Sizemore, 759
S.W.2d at 116. The appealing party bears the burden of showing a lack of substantial evidence. 
Tex. Health Facilities Comm'n v. Charter Med.--Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). 
The evidence in the record may actually weigh by a preponderance against the agency's decision,
yet satisfy the substantial evidence standard. Id.; Lewis v. Metro. Sav. & Loan Ass'n, 550
S.W.2d 11, 13 (Tex. 1977).

 At the heart of this notice dispute is PITCO's desire to challenge the Commission's
decision to grant Sledge a drilling permit. PITCO maintains that the permit is invalid due to
insufficient notice, asserting that the Commission must hear from all "affected parties" before it
can properly determine if waste will occur. PITCO claims Well No. 10 is unnecessary and that
no one else was available to present this information to the Commission. We turn to the notice
provision of rule 37 to determine if it required the Commission to notify PITCO of Sledge's
permit application.

 We construe administrative rules according to the same traditional principles as
statutes. Rodriguez v. Serv. Lloyds Ins. Co., 997 S.W.2d 248, 254 (Tex. 1999); Lewis v.
Jacksonville Bldg. & Loan Ass'n, 540 S.W.2d 307, 310 (Tex. 1976). We strive to give effect to
an agency's intent. Rodriguez, 997 S.W.2d at 254; Mitchell Energy Corp. v. Ashworth, 943
S.W.2d 436, 438 (Tex. 1997). We must follow the plain language of a rule unless it is
ambiguous. Rodriguez, 997 S.W.2d at 254; Republicbank Dallas, N.A. v. Interkal, Inc., 691
S.W.2d 605, 607 (Tex. 1985).

 The notice provision, rule 37(a)(2)(A), sets forth the persons to whom notice must
be given when the applicant seeks an exception to minimum lease-line spacing and reads as
follows:


A. When an exception to only the minimum lease-line spacing requirement is
desired, the applicant shall file a list of the mailing addresses of all affected
persons, who, for tracts closer to the well than the greater of one-half of the
prescribed minimum between-well spacing distance or the minimum lease-line
spacing distance, include:


 (i) the designated operator;


 (ii) all lessees of record for tracts that have no designated operator; and


 (iii) all owners of record of unleased mineral interests.



16 Tex. Admin. Code § 3.37(a)(2)(A) (2000). PITCO acknowledges that it does not fall within
any of the specified categories of interests presumed to be entitled to notice. 

 PITCO, however, asserts that rule 37(a)(2)(A) does not establish an exclusive list
of interests entitled to notice. We agree. The Commission's use of the word "include" in the
provision signifies that the list is not exclusive. Tex. Gov't Code Ann. § 311.005(13) (West
1998). (6) In addition, in the preamble to its rule 37 amendment in 1997, the Commission
recognized the need for a non-exclusive list. 22 Tex. Reg. 8973, 8973 (1997). The question then
is what interests are encompassed beyond the enumerated list in the provision by the language
"affected persons." Appellants (7) argue that, by its terms, the notice provision of rule 37 does not
require the Commission to notify royalty interest owners. Appellants contend that PITCO is not
an "affected person" because its overriding royalty interest is nonpossessory. PITCO asserts that
the distinction between possessory and nonpossessory interests is irrelevant because nonpossessory
interests, such as those held by royalty owners, retain their character as property interests. 
PITCO also complains that the distinction is unreasonable because the Commission notifies other
interest owners without the right to drill, such as lessees who are not operators, mineral owners,
and surface owners under other Commission rules.

 We reject PITCO's argument that the Commission notifies other interest owners
without the right to drill. Mineral owners and lessees, as possessory interests, have a right to
develop their mineral resources. Stephens City v. Mid-Kansas Oil & Gas Co., 254 S.W. 290, 292
(Tex. 1923). Given the unique purpose of rule 37-- to designate well locations for mineral
production--we refrain from broadening the scope of our review to consider other notice provisions
within the Commission's rules.

 The parties agree that the three categories of interests specified in the rule 37 notice
provision are comprised of possessory interest owners. 16 Tex. Admin. Code § 3.37(a)(2)(A). 
Royalty and overriding interests have no possessory right or interest in a tract. Standard Oil Co.
v. Marshall, 265 F.2d 46, 54 (5th Cir. 1959) (addressing the nature of overriding royalty
interests). We find, however, that the provision contains no language restricting the phrase
"affected persons" to possessory interest owners. Because the rule is not clear and unambiguous
on its face, we look beyond its language to the Commission's interpretation of rule 37 and the
rule's history to determine what interests are encompassed by the phrase "affected persons." 

 Courts must defer to an agency's interpretation of its own regulations unless the
interpretation is plainly erroneous or inconsistent with the language of the rule. United States v.
Larionoff, 431 U.S. 864, 872 (1977); Rodriguez, 997 S.W.2d at 254. "[T]he agency
interpretation becomes a part of the rule itself and represents the view of a regulatory body that
must deal with the practicalities of administering the rule." McMillan v. Tex. Natural Res.
Conservation Comm'n, 983 S.W.2d 359, 362 (Tex. App.--Austin 1998, pet. denied). The supreme
court has recognized, "[A court] cannot strike down an administrative order on the ground that
the evidence heard by the [c]ourt indicated that a more equitable one could be entered. That
procedure would be destructive of uniformity of administration." R.R. Comm'n v. Mackhank
Petroleum Co., 190 S.W.2d 802, 804 (Tex. 1945).

 The Commission has statutory jurisdiction over oil and gas wells in Texas. Tex.
Nat. Res. Code Ann. § 81.051(a)(2) (West 1993). The question of proper well location is "one
vested peculiarly in the Commission as an administrative body, and one which cannot be exercised
by the courts." Stewart v. Humble Oil & Ref. Co., 377 S.W.2d 830, 833 (Tex. 1964); accord
Tex. Nat. Res. Code Ann. § 81.051(a)(2); cf. Mackhank Petroleum Co., 190 S.W.2d at 804
("[The court] has not been clothed with the power or the facilities for making such a
determination" in its review of a lower court's decision to strike a Commission order establishing
a well's level of production).

 Appellants argue that the longstanding policy of the Commission has never required
the agency to notify royalty owners of rule 37 applications. See Shell Petroleum Corp., 137
S.W.2d at 798; Rabbit Creek Oil Co. v. Shell Petroleum Corp., 66 S.W.2d 737, 739-40 (Tex.
Civ. App.--Austin 1933, no writ). Rule 37 was promulgated by the Commission in 1919 (8) and
since then has governed the spacing of oil and gas wells across the state. When the Commission
initially incorporated the phrase "affected persons" into rule 37 in 1990, three categories of
interests presumed to be "affected," identical to those in the current rule, were enumerated in the
rule's notice provision. 15 Tex. Reg. 2634 (1990) (adopted), amended by 22 Tex. Reg. 8973,
8973 (1997). In the preamble to its 1990 rule amendment, the Commission stated that it sought
to clarify the provision's language rather than change the substance of the provision. Id. In the
preamble to its rule 37 amendment in 1997, the Commission expressly stated that the notice
provision is inapplicable to royalty owners or nonoperating mineral interest owners. 22 Tex. Reg.
8973, 8973 (1997). The Commission reasoned that these interests are considered "by virtue of
their contracts or leases, to be represented by the designated operator of the tract." Id. 

 Appellants urge that our opinions in Shell Petroleum v. Railroad Commission and
Rabbit Creek Oil v. Shell Petroleum support their reasoning. In Shell Petroleum this court
considered whether royalty owners were necessary or proper parties to a suit to contest a drilling
permit. Shell Petroleum Corp., 137 S.W.2d at 798. In acknowledging that before the
Commission a lessee also represented the royalty interests in the tract for which a permit was
sought, we stated:


In the drilling and spacing of wells the lessee represents the royalty owners in so
far as they may have any interest therein. They were so represented in the making
of the applications for the permits and in all proceedings thereunder before the
Commission; to which proceedings they were not made parties and in which they
did not participate other than by such representation.



Id. 

 In Rabbit Creek Oil, this Court addressed whether adjacent landowners and lessees
were entitled to notice under rule 37 and determined that only the adjacent lessees must be
notified. Rabbit Creek Oil Co., 66 S.W.2d at 739-40. We held that "as a practical proposition
notice to the adjacent lessees in most cases should be and is sufficient." Id. at 740. We
explained:


The rule deals with the practical matter of giving notice to the party most vitally
interested in the drilling of a well as an exception to the rule. . . . [The] interest
[of adjacent lessees] also requires them to procure all the oil possible under their
leases, and the lessees' interest in the oil is greater than that of the owner of fee,
who usually receives only one-eighth of the oil as royalty.



Id. at 739-40. 

 PITCO asserts that the supreme court's decision in HECI Exploration Co. v. Neel
contradicts appellants' contention that a lessee represents royalty interest owners before the
Commission. HECI Exploration Co. v. Neel, 982 S.W.2d 881 (Tex. 1998). PITCO maintains
the court held that there is no representational duty or obligation by a lessee to its royalty owners. 
In HECI, the court reviewed a suit by royalty owners against their lessee alleging that their oil and
gas lease contained an implied covenant obligating the lessee to notify the royalty interest owners
"(1) of the need to sue an operator on an adjoining lease for damage to the common reservoir, and
(2) that the lessee intends to sue." Id. at 883. The court concluded that the statute of limitations
barred the royalty owners' first claim. Id. at 888. Reasoning that "such a duty is not necessary
to effectuate the full purpose of the lease and is not so clearly within the contemplation of the
parties that they deemed it unnecessary to express it," (9) the court held that no implied covenant
requires a lessee to notify a royalty owner of its intent to sue an adjoining operator. Id. at 890-91. 
In reaching this conclusion, the court acknowledged that "a lessee has no inherent right to sue on
behalf of the royalty owners." Id. at 890.

 Unlike this case, the dispute in HECI arose from the lessor-lessee relationship and
the respective duties that each party owed to the other under their oil and gas lease. Here, the suit
originates from the Commission's dismissal of PITCO's complaint regarding the validity of
Sledge's drilling permit. We conclude that the ruling in HECI has no bearing on this case and
reject PITCO's argument.

 PITCO contends that Shell Petroleum and Rabbit Creek Oil are distinguishable from
this case because the lessees and the royalty interest owners in those cases shared a common
interest. PITCO alleges that an inherent conflict of interest exists between Sledge and itself as an
overriding royalty interest due to Sledge's position as a common lessee of the Holly and Holly B
Leases. Furthermore, PITCO urges that the Commission need only extend notice to royalty
interest holders who have a conflict of interest with their lessees. PITCO's solution, however, 
requires the Commission to discern whether such conflicts of interest exist. In effect, PITCO asks
the Commission to exceed the scope of its authority. See Magnolia Petroleum Co. v. R.R.
Comm'n, 170 S.W.2d 189, 191 (Tex. 1943) (recognizing that the Commission has no authority
or jurisdiction to "adjudicate questions of title or rights of possession").

 Appellants point out that PITCO's overriding royalty interest was created by the
farmout agreement between PITCO's predecessor-in-interest and Sledge's predecessor-in-interest. 
As a result, appellants argue that PITCO's proper remedy should result from the terms of that
agreement. We agree.

 Texas law recognizes that the instrument in which an overriding royalty is reserved
dictates the obligations of the lessee to the royalty owner; the relationship established by the
instrument is contractual in nature. Sunac Petroleum Corp. v. Parkes, 416 S.W.2d 798, 804-05
(Tex. 1967). Unless an assignment, such as a farmout agreement, provides otherwise, the
assignee of the oil and gas lease impliedly covenants to protect the premises against drainage when
the assignor reserves an overriding royalty. Bolton v. Coats, 533 S.W.2d 914, 916 (Tex. 1976). 
A lessee who fails to act as a reasonably prudent operator when drainage occurs violates the
implied covenant to protect the leasehold. HECI Exploration Co., 982 S.W.2d at 887 (citing
Amoco Prod. Co. v. Alexander, 622 S.W.2d 563, 568 (Tex. 1981)).

 Here, the farmout agreement reserved an overriding royalty interest, which PITCO
presently holds. PITCO asserts no additional interest with respect to Well No. 8. PITCO argues
that Sledge's ability to drill Well No. 10 affects its interest in Well No. 8 and, as a result, it is
entitled to notice under rule 37. PITCO seeks damages for the injury to its interest resulting from
the Commission's grant of the drilling permit to Sledge for Well No. 10. We note that under the
farmout agreement, PITCO may seek damages to remedy any injury to its overriding royalty
interest. (10) We conclude that the Commission's interpretation of "affected persons" is not plainly
erroneous or inconsistent with the rule's language and defer to that interpretation.

 The Commission reviewed PITCO's complaint that the drilling permit was invalid
because PITCO had not received notice of Sledge's rule 37 application. Sledge's rule 37
application contained a plat showing that Sledge was the operator for all tracts adjacent to the
Holly B Lease, the location of Well No. 10. Sledge asserted that the rule 37 exception was
necessary to drill an offset well to protect the interests under the Holly B Lease. As evidenced
by the letter ruling, the Commission denied the complaint after determining that as its own offset,
Sledge had satisfied the notice provision.

 As permitted by the provision, Sledge waived notice to itself as the designated
operator of these tracts. 16 Tex. Admin. Code § 3.37(a)(2)(A)(i) (2000). In doing so, Sledge
invoked rule 37(h)(2), which authorizes the director of the Oil and Gas Division of the
Commission to grant a requested spacing exception without holding a hearing, if written waivers
of objection are received from all persons to whom notice would be given under rule 37(a)(2). 
Id. § 3.37(h)(2). We determine that the Commission could have reasonably concluded that
Sledge's waivers of notice satisfied the requirements of rule 37(h)(2) and granted Sledge a drilling
permit for Well No. 10. Moreover, we hold that substantial evidence supported the Commission's
decision to deny PITCO's complaint and that PITCO was not entitled to notice of Sledge's
application under rule 37. 


Due Process

 PITCO further challenges the constitutionality of rule 37. In particular, PITCO
claims that because the Commission failed to provide it with proper notice of Sledge's rule 37
application, the agency violated PITCO's due process rights under the United States and Texas
Constitutions. U.S. Const. amend. XIV, §1; Tex. Const. art. I, § 19. PITCO asserts an
undisputed property right, namely, its overriding royalty interest in Well No. 8. 

 In Rabbit Creek Oil, this court considered whether the failure of rule 37 to require
notice to fee owners of adjacent lands, while providing notice to adjacent lessees, rendered the
notice provision of rule 37 unconstitutional. Rabbit Creek Oil Co., 66 S.W.2d at 739-40. We
concluded that "rule 37 is not unconstitutional because it failed to provide for notice to adjacent
landowners." Id. at 739. PITCO emphasizes that it is a "party at interest to a particular
application" with respect to Sledge's application and as such, our decision in Rabbit Creek Oil
recognizes PITCO's right to notice under rule 37. See id. Having concluded that PITCO is not
an "affected person" entitled to notice, we reject PITCO's constitutional arguments regarding rule
37. We sustain appellants' first issue.


CONCLUSION

 We conclude that the district court properly exercised jurisdiction and we affirm
the court's judgment to the extent that it denies the Commission's plea to the jurisdiction. We
also conclude that substantial evidence supported the Commission's decision to deny PITCO's
complaint. Accordingly, we reverse that part of the judgment of the district court and render
judgment that the Commission correctly determined that PITCO was not an "affected person"
entitled to notice of the rule 37 exception application filed by Sledge for Well No. 10 on the Holly
B Lease.



 


 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed in Part and Reversed in Part

Filed: November 9, 2000

Publish
1. A farmout agreement is a common form of agreement between operators in which a lessee
agrees to assign its lease to another operator who is willing to drill. Mengden v. Peninsula Prod.
Co., 544 S.W.2d 643, 645 n.1 (Tex. 1976); accord 8 Howard R. Williams & Charles J. Meyers,
Oil & Gas Law 376 (1999). "The primary characteristic of a farmout [agreement] is the
obligation of the assignee to drill one or more wells" on the tract as a prerequisite to earning the
interest in the lease. Mengden, 544 S.W.2d at 645 n.1; 8 Williams & Meyers, supra 376.
2. "The term 'overriding royalty' has a well-defined meaning in Texas. It is an interest,
which is carved out of, and constitutes a part of, the working interest created by an oil and gas
lease." In re GHR Energy Corp., 972 F.2d 96, 99 (5th Cir. 1992) (quoting Gruss v. Cummins,
329 S.W.2d 496, 501 (Tex. Civ. App.--El Paso 1959, writ ref. n.r.e.)). This type of royalty is
a fractional interest in the "gross production of oil and gas under a lease, in addition to the usual
royalty paid to the lessor, free of any expense for exploration, drilling, development, operating,
marketing, and other costs incident to the production and sale of oil and gas produced from the
lease." 8 Williams & Meyers, supra note 1, 748. Although carved out of the working interest,
an overriding royalty interest confers no right to drill, develop, or produce the oil and gas under
the leased tract and thus is viewed as nonpossessory. Id. at 1191. 
3. A working interest is an operating interest under an oil and gas lease that provides its owner
with the exclusive right to drill, produce, and exploit the minerals. 8 Williams & Meyers, supra
note 1, 1191. This interest bears all of the operating and drilling costs and is held subject to the
payment of royalties. Id.
4. This dispute occurs within the Amacker-Tippett, SW (Wolfcamp) Field, for which the
Commission has adopted special field rules that require wells to be drilled at least 660 feet from
the nearest property line, lease line, or subdivision line. See 16 Tex. Admin. Code § 3.37(d)
(2000). Because Sledge planned to drill Well No. 10 approximately 300 feet from the nearest
lease line, a rule 37 exception was required to authorize this drilling activity. Sledge actually
drilled 450 feet from the lease line and obtained an amended permit for the revised well location.
5. Section 2001.174(2) requires a court to reverse or remand a case for further proceedings:


if substantial rights of the appellant have been prejudiced because the administrative
findings, inferences, conclusions, or decisions are 


(A) in violation of a constitutional or statutory provision;


(B) in excess of the agency's statutory authority;


(C) made through unlawful procedure;


(D) affected by other error of law;


(E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or


(F) arbitrary and capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion.


Tex. Gov't Code Ann. § 2001.174(2) (West 2000).
6. Subsection (13) reads as follows: "'Includes' and 'including' are terms of enlargement and
not of limitation or exclusive enumeration, and use of the terms does not create a presumption that
components not expressed are excluded." Tex. Gov't Code Ann. § 311.005(13) (West 1998).
7. Because the positions of Sledge and the Commission do not diverge, when appropriate we
will refer to them collectively as "appellants."
8. Tex. R.R. Comm'n, Rule 37 (1919) (since amended); see also Brown v. Humble Oil & Ref.
Co., 83 S.W.2d 935, 939-41 (Tex. 1935). 
9. HECI Exploration Co., 982 S.W.2d at 883. 
10. The Commission also acknowledges that PITCO may have a civil action against Sledge
based on (1) the farmout agreement creating the overriding royalty interest, (2) a duty of fair
dealing, or (3) both grounds. Williams & Meyers, supra note 1, § 420.2, at 365. The Texas
Natural Resources Code provides jurisdiction for suits for damages. Tex. Nat. Res. Code Ann.
§ 85.321 (West 1993). We render no opinion on the suggestion as this issue is not before us.



lease. Mengden, 544 S.W.2d at 645 n.1; 8 Williams & Meyers, supra 376.
2. "The term 'overriding royalty' has a well-defined meaning in Texas. It is an interest,
which is carved out of, and constitutes a part of, the working interest created by an oil and gas
lease." In re GHR Energy Corp., 972 F.2d 96, 99 (5th Cir. 1992) (quoting Gruss v. Cummins,
329 S.W.2d 496, 501 (Tex. Civ. App.--El Paso 1959, writ ref. n.r.e.)). This type of royalty is
a fractional interest in the "gross production of oil and gas under a lease, in addition to the usual
royalty paid to the lessor, free of any expense for exploration, drilling, development, operating,
marketing, and other costs incident to the production and sale of oil and gas produced from the
lease." 8 Williams & Meyers, supra note 1, 748. Although carved out of the working interest,
an overriding royalty interest confers no right to drill, develop, or produce the oil and gas under
the leased tract and thus is viewed as nonpossessory. Id. at 1191. 
3. A working interest is an operating interest under an oil and gas lease that provides its owner
with the exclusive right t